We're ready for the second case, Whirlpool v. Freight Revenue Recovery of Miami, Inc. Whenever you're ready, counsel. We are here today to appeal a decision by the District Court to approve a writ of garnishment that is going to satisfy a judgment lien for a company against individual assets of a retirement plan. This case started out as a disagreement between companies. Whirlpool believed that Freight Revenue owed them money and so secured a judgment against them in a District Court outside of Southern District of Florida. They were looking for assets to recover that judgment and so they found that amongst the company assets or what they thought were company assets was a qualified retirement plan that was sponsored by the company. They then decided to file the writ of garnishment against that company. The District Court decided that the plan was not qualified and so against Internal Revenue Code requirements, it decided to be able to take the judgment against the company from individual assets that were within the retirement plan. You agree that it was not a qualified plan, correct? Correct. The only issue is whether the money was properly taken or this constructive trust theory. Is that your best argument, that the District Court didn't make sufficient findings on a constructive trust? Correct. It's not necessarily that it's a constructive trust, Your Honor. It is the fact that under the Internal Revenue Code itself, one of the requirements of making sure that you have a retirement plan, making sure that the retirement plan is qualified, is the fact that it's for the exclusive benefit of the participants. Again, one of the tenets within the code itself is that assets cannot be reverted back to the company. If a company is going to set up a retirement plan to be able to have the advantages, the tax advantages, the deferral of income for not only the company but also for the participants, that the company itself is not able to raid those assets, is not able to go in and use that as their own personal cookie jar for the company to be able to pull those assets out. That is a trust that is separate from the company, that is for the exclusive benefit of the participants. In this case, the judgment was against the company itself. Because it was against the company itself, that garnishment cannot be used to kind of do the same thing that the company is not allowed to do, which is go in and raid the cookie jar of the retirement plan. What I was struck by, as far as the Magistrate's report and recommendation and the District Court's judgment, is we spend a lot of time, and the parties have spent a lot of time arguing about whether there's an exemption for garnishment, whether it meets all the IRS requirements. But what seems to me to be missing, and I'm hoping you can fill in the pieces, is who owns this account? Who does Charles Schwab think owns the account? Are there plan documents that indicate where the statements for this account are going? That's what I'm trying to figure out. It may be, in fact, subject to garnishment, but if the owner of the account is not the one being garnished, then why are we going into this account? The owner of the account itself, it's a separate trust. It is a separate entity in and of itself that is being held on behalf of the participants of the retirement plan. That would be within the legal plan documents themselves, and so then there is a trustee for that trust. And are the plan documents in the record? I do not believe so, Your Honor. So who is the owner? Who gets the monthly statements about the account? Who puts money in or can take money out? That would be the trustee. The trustee is an individual, which would be the owner of the company itself, Richard Dawson. And there is, okay, so... Same person. That is the owner of the company, is also the trustee of the trust. What evidence is actually in the record with regard to who owns the account? There is a, under the writ of garnishment, there was a response by the Charles Schwab itself which lists out that the company itself, excuse me, the plan itself is being held, it's the profit sharing plan of great revenue recovery of Miami as compared to just the company itself. That just refers to the title of the account, isn't that right? Correct. But the title of the account, those types of accounts sometimes will have the company name in the title. Yes. But so what, just going back to Judge Pryor's question, what is in the record showing who owns that? Is it back to what you were saying to me as far as the trustee is the one, the gentleman, Mr. Dawson? Yes. That is the case. I don't think we have anything in the record that, for the legal plan documents themselves other than the Charles Schwab statement of it being a profit sharing plan as compared to solely a company asset. And when there, at one point in time, I think the evidence, the record shows that there were more participants than Mr. Dawson, correct? That was the finding, yes, of the magistrate. At that time, who was Mr. Dawson the trustee at that time, the sole trustee? Yes. Yes. The plan itself has been around since the early 1980s. Mr. Dawson has always been the trustee in the plan. The sole trustee. Yes. And so... When did monies stop? When was the last time the company made a contribution to this account? 2014 was the last time there was a contribution put into this account. Okay. Because I was reading in the briefs that there was some suggestion it might have, some of the contributions might have continued up closer to the time that... There's allegations, yes, by Whirlpool based on bank statements, but the form 5500 report, which was filed with the Department of Labor, stays at the last time that contributions were put into the plan, was 2014. Which was about a year and a half before the lawsuit was filed, or... Roughly. It was right around the same time, and the amounts, the lawsuit itself, the default was for almost $200,000. The last contribution into the plan was, I believe, $10,000 or $12,000. I want to go back to this question of constructive trust for just a moment, if I could, and if you are successful and the matter is remanded back based on the finding that the district court didn't make proper findings to impose a constructive trust, you'd have to agree, wouldn't you, that the court could do that on remand, could make those findings, and you'd be back in the same situation, correct? They could find the fact that, again, we're stipulating that the plan is not qualified, but when the plan does not become qualified because of the requirement by the IRS that plans do not revert back to the company, what would happen is that the trust itself is dissolved. That becomes taxable income then for the participants. In this case, it would be Mr. Dawson himself, and so instead of the assets being able to come back to the employer to pay for a judgment, it's taxable to the participants if the trust itself is part of a non-qualified plan. And here, that is a mechanism that's set up when we talk about the Florida garnishment exemption, and when they talk about, well, if it's qualified, it's exempt, but if it's not qualified, it is not exempt. Well, if it is not qualified, not exempt under the Florida garnishment exemption, then all that happens then is that is then allowed to be used if there are claims against the individuals that are within the plan itself. Again, the Florida statute, the exemption does not allow, again, those assets to be reverted back to the employer to pay for the employer's debt. They would only be able to pay for the participant's debt, and that is supported by case law, whether it be in bankruptcy or other type of garnishments here, that when creditors are attacking these assets that are potentially non-qualified, they're going after an individual debt itself or an individual garnishment. They're not going after a garnishment for a corporate entity in this case. So you would concede that if Whirlpool had a judgment against Mr. Dawson, they could go after this account? Yes. And you would concede that if the plan does not meet these qualifications, there may be tax consequences? Yes. You're just saying that that does not mean that these assets revert back to Whirlpool and therefore does not revert back to the company, and so Whirlpool cannot come after them as a company asset? Exactly. Yes, Your Honor. That if they would have done either an alter ego, or if they would have pierced the corporate veil and found out, or they would have gotten an actual judgment against Mr. Dawson individually, then yes. With the plan assets not being part of a qualified plan, then they would be entitled to this writ of garnishment. But the fact that they did not do that, that they're going after and they're trying to have an asset that's held within trust for participants to actually be used or to pay company debts, I think that sets a dangerous precedent here. Any company now at this case, if they have a creditor against a company, they can find out, and if the company is in bad financial condition, they can decide, well, let's no longer take the burden, the time, and the cost to qualify this plan. Let's let it become unqualified, and then all of a sudden when our creditors are here, they can go ahead and use the assets that are held for the exclusive benefit of the participants to pay for company debt. Let me ask you one question about the source of the funds in this account. Do they come exclusively from freight revenue, or did Mr. Dawson make any contributions himself individually? The majority of the assets are actually from a rollover that Mr. Dawson had from a prior rollover qualified plan into the company itself. Does that answer your question? And is that, that's in the record? That is in, I believe that is in our brief, the appellate brief itself. I don't think we have any evidence of that in the record itself. Was his rollover from anything that was in any way tied to freight revenue, or was it completely individually held? I believe it was completely individually held. Let's see if my time's up. I don't know if there's any other questions. Thank you. Good morning. May it please the Court. My name is Shawn Libman, and along with my co-counsel, Stephanie Simm, we represent Appley Whirlpool Corporation. The District Court was correct in holding that the Charles Schwab account is not a profit-sharing plan. It's simply an account holding freight revenue assets that is subject to garnishment. There are strict requirements that profit-sharing plans must be maintained and complied in compliance with IRS codes so the plan can get protections and benefits under the law. Freight revenue failed to comply with the law and is not entitled to those protections. What if we agree completely with all of the arguments you have made that it's not a qualified plan, that the IRS may not recognize it? What if all of that is absolutely correct? How does that mean that the assets in this account belong to freight revenue? Well, freight revenue's entire argument that they're claiming that the money should belong to Dawson is based on the fact that it is a profit-sharing plan. And our argument is, if they haven't complied with several provisions of 401, then how can they claim the benefits under 401 to protect the plan? IRS code 401A controls how a profit-sharing plan is supposed to be maintained. Freight revenue conceded several violations of 401, but then they want to use that exact same statute to say, well, okay, so what, we violated, but under that section there, we say we can't use the money for this purpose. But if it's not being operated as a profit-sharing plan, then it shouldn't be considered a profit-sharing plan and it shouldn't be given the benefits of a profit-sharing plan and the protections of a profit-sharing plan. The Department of Labor actually gives great guidance on this very issue, because they've set forth in regulations what they would consider a profit-sharing plan, and if they reviewed this exact plan and the way that it was operated, they would come to the conclusion that it's not being operated as a profit-sharing plan, and so it shouldn't receive any protections and benefits under the law. Was it a qualified plan when it was created? In 1984, there's a possibility that it could have been in that time, and one very important fact that I need to correct on the record here is whether or not there were other employees in the plan over time. And it's an important fact that there was actually no record evidence whatsoever of other employees being in this plan. The only person who's ever, that the only record evidence shows that Richard Dawson is the only participant over time. There's a statement made by opposing counsel here that there was record evidence of other participants, and that's actually not correct at all, and there's testimony from Richard Dawson in two different places where he admitted there's no evidence of other employees. It's been him the whole time. There's also another thing I need to correct is that the evidence of where the funds in the account came from was not from, that evidence was not that it was a rollover. The evidence in the record is that this was 100% funded by freight revenue assets. And so we need to essentially strip down the argument from, if you have a bank account and you set up a bank account and you say it's a profit sharing plan, but then you do absolutely nothing to comply with the law in the operation of the plan. You fail to update your plan documents. You make excess contributions and violated law. Most importantly, you enter into prohibited transactions that would strip the account completely of any benefits under the law once the IRS would find out about that. You know, if you're not operating it in compliance with 401 in so many different ways to the point of not even being operated as a profit sharing plan, excluding people that probably should have been included, things like that, if it comes down to that, then how could you even say you should be entitled to the benefits of protection under the IRS code? Well, isn't the question who's operating it in that manner? Is it the company or is it the individual? What did the district court say about ownership? That's really the key, isn't it? What the district court said about who owned this and the reason for it? Exactly. Well, the district court was correct in holding that because it's not a profit sharing plan and the funds were derived from freight revenue assets, the money is freight revenue assets is subject to garnishment. Well, again, I hate to beat this dead horse, but didn't the district court say it was because it was imposing a constructive trust without findings that a constructive trust exists? Yeah, I'm not, I don't remember seeing in the record that the court made a constructive trust, but I'm not sure I can answer that question. So essentially, there's multiple protections what Freight Revenue is claiming here today. They claim that the account should be not subject to distribution under ERISA and under 401. Now, I addressed before 401, so I want to address ERISA also. ERISA has an anti-alienation provision, meaning you can't use the money in a profit sharing plan for this purpose. And we established through the Department of Labor definitions that there were no employees in the plan. And as I stated, there's no record evidence of any employees in the plan. And without any employees in the plan, you don't get ERISA protection. Now, all the cases... I want to go back to Judge Branch's question. Yes. Let's say we all agree that the plan is not compliant with ERISA and it doesn't comply with the IRS regulations. How does that mean that this is somehow recaptured income or that this is under the ownership of Freight Revenue, those assets? The money's all derived from Freight Revenue assets. It's an account where it was not operated as a profit sharing plan. It's almost like a common sense argument because if the money in the account... If they just put the title on the account but then never operated it that way, why should they be entitled to the benefits and protections of that same law? What is the evidence that it's Freight Revenue's money in the account? There was testimony from Mr. Dawson and his bank statements which all show that the money came directly from Freight Revenue bank accounts and that he admitted these are Freight Revenue assets that are being deposited in the account. There's no employee contributions. That's what he specifically admitted to on the record. What if Freight Revenue had, whenever this account had been created, had simply opened a bank account for one person, for Richard Dawson, and started every month putting certain amounts in it and it's just a bank account in his name and they're not trying to get it qualified as ERISA, they're not trying to get any kind of IRS qualifications. Would you concede in that circumstance, those are not Freight Revenue assets that could be captured? Well, if it was not, it matters how the account was set up. If it was set up and it was taxed income given to Richard Dawson, because that's essentially what they're doing, they're trying to avoid the taxes, and so they're putting it into a profit sharing plan. So if it's taxed income and they're paying income to Richard Dawson, it's taxable, then it's his money. It's getting paid directly to him. Okay, so in this case though, they do try to get tax benefits. So why is it not simply that you didn't comply, so we're now going to start taxing this, and that's going to be a consequence that Mr. Dawson faces. But what magically makes this revert back to Freight Revenue? Well, these are egregious violations. That's on the record, the testimony is that these are egregious violations of law that can't simply be corrected by paying taxes. But how do you get from egregious violations of this account where he's going to have to and penalties, taxes, whatnot, to that, oh, we're going to deem that this has reverted back to the company. I think that's the piece of the puzzle that I'm struggling most with. You may still have to owe taxes on this if it comes down to it. This isn't a determination of taxation. It's not mutually exclusive. It could be that it turns out that this money shouldn't have been put into a profit sharing plan to begin with. It shouldn't have been treated the way it was. And then the money in the account should be used for the garnishment, and they should have to pay taxes on it. See, that's the leap that you're making, is that even if we concede all of the points about ERISA and about tax consequences, how does this go from Mr. Dawson back to freight revenue? Because you would concede that Whirlpool cannot reach these assets through garnishment unless these are deemed to be assets of freight revenue, correct? Well, yes, Your Honor, and there are additional alternate justifications raised in the brief, which we probably don't have enough time to go into today. That's my question for you earlier, because you've indicated in your brief, if it's determined that the account somehow belongs to Dawson, then he's simply holding those assets in a constructive trust for freight revenue until the tax returns are corrected to remove tax deductions. Yes, that's correct. So that's actually one of our alternate justifications. There's no findings by the district court in that regard. There's no findings as to some of your other alternative. Right. There's no findings because it was four legal justifications that were presented to the court in our trial briefs. The court accepted the first justification, and because it accepted the first justification, the issue was resolved and there was no further inquiry needed into the other three. And what, again, was the first justification? The first justification is that this is not a profit-sharing plan. It's not been operated as a profit-sharing plan, so the money in the account belongs to freight revenue, and it's subject to garnishment. Do you agree that it's a question of fact who the account belongs to? Yes. Well, where the source of the fund comes from, it's freight revenue assets. In our opinion, our argument is that if this is not operating as a profit-sharing plan, they can't claim the money belongs to Richard Dawson. Just because they put the name on the account doesn't mean you get those benefits. If the Department of Treasury wouldn't consider this a profit-sharing plan, the court is fully justified in making that same determination and saying it's not a profit-sharing plan. So why should you get the benefits? If you say 401, okay, well, under 401A2 is where we get this benefit. But if you didn't comply with 401A1, A3, A4, A5, and actually you also violated A2 by entering into prohibited transactions, this isn't a checklist where you can just kind of pick and choose what you want to comply with. You have to comply with the entire 401A in order to get a qualified trust. And failing to operate an account in that manner, according to the Department of Treasury, says look at the operation of an account. If the account is being used to give money to shareholders, to subterfuge assets to shareholders, which is exactly what they're doing here. Richard Dawson is the sole director, sole owner, sole shareholder of freight revenue. And so they're trying to subterfuge all the profits from freight revenue directly to Richard Dawson by avoiding and avoiding taxation and avoiding creditors in the meantime. If the Department of Treasury is going to look at an account like this and say that's not a profit-sharing plan, why should they then get the benefits and protections of a profit-sharing plan and not be subject to creditors? But see, if you're the IRS right now, I might be agreeing with you and saying absolutely you win, but you're not the IRS. You're trying to say because of that noncompliance with IRS regulations, we're going to revert it back. And that's kind of the piece of the puzzle that I'm struggling with. But let me ask you a related question. Do you agree with him that the last contribution into this account was in 2014? Actually, the money in the account continued to grow after years, and freight revenue did not present any record evidence to establish a source of that income. And so part of the argument is that there were continuous contributions in the account that were in excess of 401 allowances. And what evidence is there that contrary to what he's represented, there were contributions past 2014 simply because the value of the account continued to grow? And the Charles Schwab's account showed deposits, monthly deposits, that continued to be deposited. Through when? Your Honor, I'm sorry, I don't have the exact date of that. Is that in the record? It should be in the record of all the Charles Schwab accounts were fully evaluated at the trial court. So it should be in the brief from the trial court hearing, the trial court's bench trial. But additionally, the record evidence also shows that freight revenue misrepresented to the IRS what was in the account. The form 5500s were actually wrong. So he's relying, opposing counsel here is relying on form 5500s that were filed with the IRS in order to determine where the funds came from, how much was in the funds, things like that. But we actually proved at the trial that the form 5500s were all incorrect because they did not report certain assets that were property that was being purchased by Richard Dawson on behalf of one of his own companies, Lehigh Lots, which is the prohibited transaction. They weren't using CPA audited financial statements, they were not issuing bonds to protect those accounts. Again, all of these violations of why this is not being operated as a profit sharing plan. And then they essentially lied to the IRS through the 5500s to avoid disclosing this information to them. Again, this is, how can this be that you're going to get the protections without adhering to the rules? It just, it can't be that you can have both. And I want to address something before you, Judge Branch, you mentioned, if I were the IRS, you would accept my argument. Well, we're not here as taxation. We only are really talking about garnishment, so I have to make a parallel argument to whatever the tax that the IRS would make in this case. Because I'm not the IRS, I am representing Whirlpool, but I'm only guided by what the IRS has issued because that's what's out there. What's out there is IRS codes, cases that are evaluating those codes, so I have to make the parallel argument that the IRS would make here. Let me ask you just a point of information. The judgment that is being collected through the garnishment, was that the result of a settlement? No. And that was actually something that I needed to correct as well, is that this was a stipulated judgment from the District Court of Michigan. Freight revenue is represented in that case, it was not a default judgment, they admitted that they owed the money to freight revenue, they were actually concealing money that they were taking from Whirlpool. Is that stipulated, or did the court make any findings with regard to any wrongdoing? Yes, it was actually filed, the stipulated judgment was filed with the court as part of the garnishment, the writ of garnishment. And when we filed the writ of garnishment, we just issued a writ to Charles Schwab thinking that there was a bank account for freight revenue there, and Charles Schwab came back and informed us of this account. Your Honors, my time is up. In conclusion, the evidence overwhelmingly supports the fact that freight revenue's conduct amounts to egregious violations of law, set forth by various codes, and they should not be rewarded by allowing them to claim exemptions. The District Court should affirm, this court should affirm the District Court's ruling that the money in the account is subject to garnishment to pay freight revenue's judgment. Thank you. Thank you. Each of you have hit on the leap that is going too far that Whirlpool is trying to make. The fact is that if the plan is unqualified, if the Treasury would come in and state that it is not qualified, if the Department of Labor would come in and say that it is not The consequence, the punishment, the effect of that is that that trust is dissolved and becomes taxable income to the participants, in this case, it would be Mr. Dawson. There is no legal support that Whirlpool has that allows for when a plan no longer is qualified that those plan assets revert back to the corporation itself. It's right within the code itself that basically, paraphrasing, says that it's impossible for any part of the corpus or income to be used, diverted, or purposes other than the exclusive benefit of the employees or the beneficiaries. That is our main argument, is that leap that has gone too far in the fact of what is happening. Any type of, again, stipulating completely, the plan is not qualified, if the Department of Labor would come in. In fact, there is a large section here and when the District Court judge approved the important recommendation, started to bring in ERISA. Retirement plans being very complex are actually ruled by two different government agencies. We have the IRS under the Internal Revenue Code and we have the Department of Labor under ERISA. To narrow it down for you all, we don't even have to deal with ERISA. We don't have to worry about whether there are other employees in the plan. We don't need to be subject to ERISA for freight revenue to win this case. We can completely rely on the Internal Revenue Code itself. There are plans that are exempt from ERISA, such as governmental plans, church plans, that still need to make sure that they comply with any type of requirements under the tax law to make sure that that is happening in the case. So there is no need to even get into ERISA or the Department of Labor. We can deal strictly with the Internal Revenue Code. Their requirements itself, again, the requirement that assets of plans should not be reverting back to the employer. If there are issues, if there is non-compliance with any of these requirements, the requirements that counsel has listed for Whirlpool, the effect of that is that it becomes taxable income to those participants. Whirlpool's counsel has indicated that contributions continued past 2014. Can you address whether that's correct? There are allegations due to deposits that were made. There were assets that were held outside of the Charles Schwab account where money needed to go in and out. I'm relying on the last form 5500, which has not been challenged by the Department of Labor, to state that the last contributions in were 2014. There are no further questions. Let me ask one, and this is going to be a hypothetical, but I could imagine a situation where the IRS believes these assets belong to Mr. Dawson and taxes him for not complying with the IRS code, and yet the court sends it, says this is a freight revenue account and it is subject to garnishment. That could potentially set up a situation where Mr. Dawson is being assessed by the IRS for monies that he's no longer in control of, and that could set up another court battle. Completely, Your Honor. Again, Whirlpool was not without remedy here, and we've talked about this. With the fact that if they're claiming that the plan is not qualified, that the 401A within the Internal Revenue Code was not satisfied, again, they had the ability to either get the personal judgment, they had the ability to pierce the culprit veil, alter ego, whatever requirement they would need to make sure that that is an individual. Again, Mr. Dawson is the sole owner, director, and president of the company. What they're trying to do then is to morph him into the corporation itself without actually going through the legal steps that are required to be able to do that. Again, Judge Branch, to your question, yes, there was an alternative mechanism here. Whirlpool was not left without legal remedy. They did not go through the proper legal steps. In conclusion, we ask this court to overturn the district's decision to approve the writ of garnishment against the Charles Schwab account, which took retirement assets that were held for the exclusive benefit of the participants to pay a corporate debt. Thank you.